UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | CR 07-359 (MJD/FLN) |
| Plaintiff, | |
| V. | **REPORT AND RECOMMENDATION** |
| Daine Joseph Adam Linderman, | |
| Defendants. | |

Thomas Hollenhorst, Assistant United States Attorney, for the Government.
Douglas Olson for Defendant.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on November 28, 2007, on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#21] and Defendant's Motion to Suppress Statements, Admissions, and Answers [#22]. At the hearing, the Court heard testimony from FBI Special Agent Lisa Nielsen and Deputy United States Marshal Nathan Matthews. The Government submitted three exhibits into evidence.[1] The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's motions be denied.

___

[1]   Gov't Ex. 1:  Application for Search Warrant and Supporting Affidavit, Search Warrant, and Search Warrant Return for a Black Chevrolet Blazer.
Gov't Ex. 2:  Prisoner Custody Alert Notice, Form USM-130.
Gov't Ex. 3:  United States Marshal policy regarding Form USM-130.

## I.   FINDINGS OF FACT

A.   **Seizure and Search of Chevrolet Blazer**

FBI Special Agent Nielsen testified regarding the investigation of the Defendant. Officer Nielsen is the case agent in this case. Her testimony pertained to the events leading up to and including the seizure and search of a black Chevrolet Blazer.

On Friday, August 24, 2007, law enforcement attempted to execute an arrest warrant for the Defendant. The Defendant was located inside an apartment in Hudson, Wisconsin. Upon the arrival of law enforcement, the Defendant took hostages inside the apartment, which prevented law enforcement from entering the apartment to execute the arrest warrant. The Defendant evaded capture by opening fire on law enforcement as he exited the apartment. He ran toward and drove off in a black Chevrolet Blazer.

Law enforcement pursued the Defendant as he drove over the Interstate 94 bridge into Minnesota. The Defendant was arrested after invading a home in Lakeland, Minnesota, and shooting the homeowner with a handgun.

A black Chevrolet Blazer was found abandoned in a ditch near the home that the Defendant invaded. A passerby witnessed this vehicle crash into the ditch and a man run from the vehicle. The vehicle matched the description of the vehicle that the Defendant used to flee from Wisconsin into Minnesota.

The Washington County Sheriff towed the vehicle to an evidence bay at their office. The vehicle was not searched at that time. On Monday, August 27, 2007, Detective Marc Lombardi applied for a search warrant to search the black Chevrolet Blazer. (Ex. 1.) The affidavit recited the facts as set forth above. (Ex. 1.) The search warrant was signed on August 27, 2007, and executed

the same day. (Ex. 1.)

**B.     Defendant's Statements During Booking**

On October 22, 2007, the Defendant was transferred from state custody to federal custody. As part of the federal booking process, Deputy Matthews asked a series of questions from a form titled: Prisoner Custody Alert Notice. The purpose of the form is "to ensure that written notification is provided to all facilities . . . of any known special circumstances regarding a particular prisoner." (Ex. 3.) The Prisoner Custody Alert Notice directed Deputy Matthews to inquire whether the Defendant was suicidal. (Ex. 2.) When asked, the Defendant denied being suicidal, but stated he was homicidal. (Ex. 2.)

At the time that the Defendant was transferred into federal custody, he had been federally indicted, but had not made a federal appearance or been appointed counsel. The Defendant had also appeared in Washington County on state charges stemming from the same incidents that led to the federal charges. An attorney had been appointed to represent the Defendant on the state charges.

## II. CONCLUSIONS OF LAW

**A.     The Seizure and Search of the Black Chevrolet Blazer Was Supported By Probable Cause .**

The Fourth Amendment guarantee against unreasonable searches is preserved by "a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386 (1985). In certain circumstances, however, a warrantless search may comport with the reasonableness standard. Defendant challenges the reasonableness of the seizure and search of the black Chevrolet Blazer.

The automobile exception enables an officer to seize an automobile without a warrant if they have probable cause to believe the vehicle constitutes or contains evidence of criminal activity.

*United States v. Sims*, 424 F.3d 691, 693 (8th Cir. 2005) (citing *Chambers v. Maroney*, 399 U.S. 42, 51 (1970)). After the vehicle had been impounded, officers may conduct a warrantless search of the vehicle based on probable cause that the vehicle contained evidence of a crime. *Sims*, 424 F.3d at 693 (citing *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999)).

Here, the officers had probable cause to seize and search the black Chevrolet Blazer. The vehicle matched the description of a vehicle that the Defendant used to flee law enforcement after exchanging gun fire with them. It was found crashed in a ditch in close proximity to the location where the Defendant was apprehended. Furthermore, a witness saw the vehicle crash into the ditch and a man run from the vehicle. Law enforcement had ample probable cause to believe that the black Chevrolet Blazer contained evidence of criminal activity. Therefore, their ensuing seizure and search of the vehicle was justified under the automobile exception to the search warrant requirement and Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#21] must be denied.

The fact that law enforcement actually obtained a warrant to search the vehicle is immaterial as the search would have been permissible without a warrant. Since the search would have been legal if a warrant was not obtained, it is not necessary to determine whether the search warrant was supported by probable cause.

**B.    The Statements Made To The United States Marshal During The Federal Booking Process Are Admissible.**

Defendant challenges the admissibly of statements made during his booking into federal custody. Specifically, the Defendant seeks to suppress his statement that he is homicidal. The Defendant alleges that this statement was in violation of his Fifth Amendment rights under *Miranda* and his Sixth Amendment right to counsel.

4

1.   **The Defendant's Statement Is Not The Product of Interrogation.**

In order to be afforded protection under *Miranda*, the Defendant must show that he was taken into custody and subjected to interrogation. *See Miranda v. Arizona*, 384 U.S. 466, 477-78 (1966). Not all statements made while in custody are products of interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 299 (1980). The United States Supreme Court has defined interrogation as "express questioning or its functional equivalent." *See Innis*, 446 U.S. at 300–01. However, routine "booking" questions are not considered interrogation because they are not designed to elicit incriminating statements or responses. *See Pennsylvania v. Muniz*, 496 U.S. 582, 600-02 (1990); *United States v. Bishop*, 66 F.3d 569, 572 (3rd Cir. 1995) (routine booking question about defendant's limp not designed to elicit incriminating responses and not interrogation).

In the instant case, the Defendant made the statements in response to questions pertaining to his physical and mental health. These questions were routinely asked of defendants entering federal custody. The purpose of the question was not to elicit an incriminating response, but rather to provide appropriate medical care to the Defendant. This Court concludes that the questions asked of the Defendant did not constitute interrogation because they were routine booking questions and were not designed to elicit incriminating statements. Consequently, there was no *Miranda* violation.

2.   **Statements Made by the Defendant Were Not Deliberately Elicited by Law Enforcement.**

The Defendant claims that his Sixth Amendment right to counsel was violated when Deputy Matthews questioned him regarding potential medical conditions. "An accused is denied ' the basic protections' of the Sixth Amendment 'when there [is] used against him at his trial evidence of his own incriminating words, which federal agents . . . deliberately elicited from him after he had been

5

indicted and in the absence of his counsel.'" *Fellers v. United States*, 540 U.S. 519, 523 (2004) (citing *Massiah v. United States*, 377 U.S. 201 (1964)). In *Massiah*, the Supreme Court held that the Sixth Amendment was violated when the government "deliberately elicited" incriminating statements from an indicted defendant without his attorney present. The Supreme Court has continued to enforce the Sixth Amendment prohibition against deliberate elicitation of incriminating statements from persons charged with crimes. *See United States v. Henry*, 447 U.S. 214 (1980); *Maine v. Moulton*, 474 U.S. 159 (1985). However, the prohibition only applies when law enforcement takes action "designed deliberately to elicit incriminating remarks." *Kuhlman v. Wilson*, 477 U.S. 436, 459 (1986).

Here, it is clear Deputy Matthews questioned the Defendant after he had been indicted and in the absence of counsel. However, the questions posed by Deputy Matthews were not designed deliberately to elicit incriminating remarks. The evidence shows that Deputy Matthews only asked the questions to determine whether the Defendant required any special medical care while in federal custody. There is no evidence to suggest that Deputy Matthews asked the Defendant if he was suicidal in an attempt to elicit an incriminating remark. Since the statement by the Defendant that he is homicidal was not deliberately elicited by Deputy Matthews, there was no Sixth Amendment violation.

Defendant's statement that he was homicidal is neither the product of interrogation under *Miranda*, nor deliberately elicited for purposes of the Sixth Amendment. Therefore, Defendant's Motion to Suppress Statements, Admissions, and Answers [#22] must be denied.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#21] and Defendant's Motion to Suppress Statements, Admissions, and Answers [#22] be **DENIED**.

DATED: December 10, 2007            *s/ Franklin L. Noel*
                                                       FRANKLIN L. NOEL
                                                       United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 27, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **December 27, 2007,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.